764 So.2d 898 (2000)
Harry SCHNECK, Appellant,
v.
STATE of Florida, Appellee.
No. 5D99-2859.
District Court of Appeal of Florida, Fifth District.
August 11, 2000.
*899 James B. Gibson, Public Defender, and Barbara C. Davis, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Patrick W. Krechowski, Assistant Attorney General, Daytona Beach, for Appellee.
W. SHARP, J.
Schneck appeals from his judgment and sentence, following the court's adjudication that he violated his probation by contacting and harassing his former wife, Barbara Christie. He contends the trial court erred in finding he willfully violated his probation. We affirm.
This is a close case. In January 1997, Barbara obtained a domestic violence injunction against Schneck. On March 3, 1997, Schneck was charged with aggravated stalking and violation of a domestic violence injunction. Schneck pled no contest to the charges. The court withheld adjudication of guilt and placed Schneck on one year community control followed by four years of probation. One of the conditions imposed was that Schneck have no contact with his former wife, except for divorce court proceedings.
On December 17, 1998, the parties' marriage was dissolved. The judgment gave primary residential custody of the parties' three daughters to Barbara, and gave Schneck visitation rights. The court also provided that the Guardian ad Litem would remain the children's guardian for the next year, and if the children reported inappropriate or negative behavior on the part of Schneck, the Guardian ad Litem could terminate visitation. Apparently the Guardian ad Litem terminated Schneck's unsupervised visitation in October of 1998. On March 3, 1999, an affidavit was filed alleging that Schneck violated his probation by having contact with Barbara on October 30, 1998 and on December 24, 1998.
We must review the evidence presented at the probation hearing in the best light to uphold the court's finding,[1] Barbara testified in October that Schneck became very upset about his inability to see his children, and made more than ten telephone calls to her. In December, when Barbara was attending a Christmas Eve service at church, Schneck came to watch the children perform in a Nativity scene, and gave them gifts. He complained to Barbara about not being able to see his children several times. He followed her when she took the children to change out *900 of their costumes, and said "I ought to kill you for taking my kids away from me." She called the police. As she was trying to get the children in her car, Schneck told her: "This is a Christmas Eve our kids are always going to remember, you sending their Daddy to jail." He appeared to be intoxicated, was screaming, and out of control.
Schneck's probation officer testified he told Schneck he should have no contact with Barbara, except for divorce court proceedings. The Guardian ad Litem also testified Schneck was responsible for transporting the children for visitation, but he was supposed to have no contact with Barbara other than the exchange of information concerning the children.
Schneck testified his probation officer said he could discuss and arrange visitations with Barbara, and pick up and drop off his children. He was supposed to have the girls for visitation on Halloween, but Barbara called and said he could not have the children. She did not explain why and hung up on him, telling him to call his attorney. He tried to call her back to get an explanation. When he realized a police officer was with Barbara, he went to her house to explain that he was supposed to have visitation with his children. The officer told him not to make further calls. He did not.
Schneck admitted attending the Christmas program, but according to his visitation rights, he was allowed to attend all functions concerning his children. He told Barbara he had arranged for a friend to supervise his visitation and he asked her if he could get a few hours of visitation with his children. Barbara ignored him. He was never alone with Barbara that evening, and he denied threatening to kill her.
The court resolved this family dispute by ruling Schneck had violated his probation, even giving him the benefit of the doubt. It accepted Schneck's view that he was allowed visitation with his children, but it concluded his activities bordered more on harassment than on visitation Schneck went beyond the bounds of reason.
To revoke a defendant's probation, the state must prove by a preponderance of the evidence that the defendant willfully violated a substantial condition of his probation. Crume v. State, 703 So.2d 1216 (Fla. 5th DCA 1997). The condition also must be one that is clear and not ambiguous, or subject to different reasonable interpretations.[2] This could be problematic in a family dispute situation where there may be fault on both sides, and as in this case, Schneck's interpretation of the condition as allowing visitation and sufficient contact with Barbara to make arrangements for visitation, is reasonable.
However, looking at the evidence presented against Schneck in a light most favorable to the state, we cannot say the trial court erred in finding Schneck's behavior went beyond anything necessary to discuss or arrange visitation. Understandably he was upset when denied visitation with his children, for what reasons we do not know. However, the proper remedy was not to harass and threaten his former wife, but to seek enforcement or clarification of his visitation rights in court.
AFFIRMED.
COBB and GRIFFIN, JJ., concur
NOTES
[1] Matthews v. State, 736 So.2d 72 (Fla. 4th DCA 1999); Nelson v. State, 453 So.2d 473 (Fla. 2d DCA 1984).
[2] Rothery v. State, 757 So.2d 1256 (Fla. 5th DCA 2000).